In re GRADING INDEPENDENCE AND WEST-PORT ROAD; KANSAS CITY v. RICHARD SMITH et al., Appellants.

Division Two, December 19, 1911.

1. **TRIAL BY JURY: Constitutional Guaranty: Action at Law.** The Constitution of Missouri guarantees a trial by jury of all issues of fact arising in legal actions or proceedings. The parties to legal proceedings cannot be deprived, without their consent, of a trial by jury, composed as at common law, of any issue of fact for the trial of which it was necessary to call a jury when the first Constitution of this State was adopted.

2. **————: Enforcing Grading Ordinance: Abandonment of Highway: Defense.** When abandonment of the highway in question is set up as a defense to a proceeding to enforce a grading ordinance, under the charter of Kansas City, the issue arising is one of fact to be tried by a jury. If the verdict of the jury should be against the defendants, the court may then proceed to enforce the ordinance; and the defendants will be concluded by the adjudications invoked in their answers from thereafter bringing an independent suit to recover the property or establish a title thereto.

Appeal from Jackson Circuit Court.—*Hon. James E. Goodrich,* Judge.

REVERSED AND REMANDED (*with directions*).

*Gage, Ladd & Small* and *R. J. Smith* for appellants.

Defendants' motion for trial before a common law jury should have been sustained. (a) Abandonment is a question of fact for jury. Clark v. Mammerle, 36 Mo. 620; Fine v. Public Schools, 30 Mo. 166; Landes v. Perkins, 12 Mo. 238; Campbell v. City of Kansas, 102 Mo. 348. (b) The practice code provides for trial by common law jury. Badgley v. St. Louis, 149 Mo. 122; Stevens v. Kansas City, 146 Mo. 465; Lovitt v. Russell, 138 Mo. 474; Drainage Dist. v. Jamison, 176 Mo. 564; State ex rel. v. Gates, 190 Mo. 556.

*John G. Park* and *John G. Schaich* for respondent; *Frank Hagerman* and *Cowherd, Ingraham, Durham & Morse* of counsel.

Appellants' request for a trial by common law jury was properly denied. (a) This proceeding for trial by jury of six freeholders is provided by the city charter. The charter makes no provision for trial by a common law jury in this kind of case. Consequently in treating appellants' answers and motions as pleas in abatement, and according them a full hearing herein, the court gave them really more than they were entitled to in this case. All the hearing the charter contemplates, is upon the issue of whether or not abutters will be damaged by the grading. Sec. 6, art. 8, Charter of 1889. (b) It is proper for the city to provide the procedure in such cases, and the plan pro-

vided by it is exclusive. It is a matter of local concern. Sec. 13, art. 8, Charter of 1889; City of Kansas v. Hill, 80 Mo. 523; State ex rel. v. Field, 99 Mo. 352.

BOND, C.—This is a proceeding begun in the circuit court at Kansas City for the purpose of enforcing a grading ordinance, approved October 25, 1906, entitled: "An ordinance to grade Independence and Westport road from Oak street or Gillham road to Janssen Place."

A certified copy of the ordinance was filed in the circuit court, and publication thereof was made as prescribed by section 5 of article 8 of the charter, which was adopted by Kansas City in pursuance of the enabling act contained in article 9, sections 16 and 17 of the Constitution of 1875.

Before the expiration of the time provided for filing the claims for damages, defendants, Richard Smith and Olivia Smith, appeared and filed separate answers to said proceeding, each of which denied the existence of the road referred to in said ordinance; admitted that many years ago a road of that name "of an uncertain and irregular width, varying from one rod to thirty feet," but of no uniform width and not forty feet wide in any place, had been used by the public between the towns of Westport and Independence, Missouri, but averring that said road was never legally established nor worked by the road officials of Jackson county, Missouri, nor changed, nor improved by the city officials of either the city of Westport or Kansas City, Missouri, while it was within their respective limits; and averring that since the year 1885 no public money or labor had been expended on said road. The defendants answered further, that from the settlement of the adjoining territory (which took place in 1885 and 1887) the traveling public ceased to

use the Independence and Westport road, but used in lieu thereof irregularly established streets; and that from said time the said road was entirely abandoned by the traveling public and has never since been used as a highway between said city of Independence and said city of Westport, now a part of Kansas City, Missouri; and that for more than fifteen years, last past (except for the ordinance now sought to be enforced), this alleged part of said Independence and Westport road was never the subject of municipal legislation, nor improved, nor received any attention of any kind or character whatsoever, but has been continuously taxed as the private property of individuals, being taxed for all purposes, etc.

The answers then set forth the portion of the road which it averred belonged to the respective defendants, and concluded, to-wit: "By reason of all of which, this defendant avers that the said Independence and Westport road, which is now sought to be graded in this proceeding, under the said Ordinance No. 34157, has long since been abandoned as a public road and highway; that the object and purpose for which it was originally set apart and used by the public has long since passed away; that its legal existence as a State or county road and thoroughfare has long since lapsed and been abandoned by the public; that plaintiff, Kansas City, Missouri, by its acts and proceedings as above enumerated, is and ought to be estopped to claim any portion of this said road as and for a public street or highway. Wherefore, this defendant prays that this proceeding be dismissed and that he recover his costs herein expended."

The aforesaid answers were filed by leave of court. Thereupon the defendants moved the court for a trial of the issues raised by their separate answers by a common law jury of twelve jurors, and alleged as grounds for said motion, to-wit:

"1st. That each and every issue raised by the separate answers of the defendants, Richard Smith and Olivia A. Smith, filed in this cause, is an issue of fact, and as such is triable only by and before a common law jury.

"2d. That the said separate answers filed herein raise more particularly the issue of fact as to whether the said alleged road sought to be graded in this proceeding has not in fact been abandoned by the public long prior to the institution of these proceedings and the passage of the ordinance of Kansas City, Missouri, on which these proceedings are based."

This motion was overruled by the court, to whose action in so doing defendants duly excepted and presented a bill of exceptions, which was signed, sealed and delivered to the court, and made a part of the record the 16th day of January, 1908. Thereupon, the cause was tried before the court, and the respective parties presented the testimony of many witnesses, covering a long period of time, bearing on the issues raised by the answers of the defendants.

After hearing all the evidence and refusing a number of declarations of law, requested by defendants, the court gave four declarations of law at the request of defendants, two of which are, to-wit:

"II. The court declares the law to be that under the charter of Kansas City, Missouri, no ordinance to grade a street or highway can have any legal effect or validity if, at the time of the passage of such ordinance to grade, such street or highway did not have any legal existence.

"III. The court declares the law to be that in proceedings to grade public streets and highways under the charter of Kansas City, Missouri, and the general law, the jurisdiction of the court depends on the validity of the ordinance to grade, and, if the ordinance be null and void for any reason, then the

court is without jurisdiction and such proceedings must be dismissed.''

After argument of counsel, the court handed down its decision on the 14th of December, 1907, which recited the previous steps taken in the cause; the refusal of defendants' demand for a common law jury and the exception saved to that ruling; and announced the following finding of facts upon the issues joined:

"1st. Ordinance No. 34157, entitled 'An ordinance to grade Independence and Westport road from Oak street or Gillham road to Janssen Place,' was passed by the common council of Kansas City, Missouri, and was approved by the mayor October 25, 1906.

"2d. The said road when in Jackson county, Missouri, was located, laid out and put in use about 1841, by proceedings in the county court of said county, pursuant to the law of the State then in force, and became a State and county road, and was worked by the county as such up to the year 1887. It was a public traveled road for some years prior to 1841, and the commissioners appointed by Legislature laid out the road along the line where the road theretofore traveled had been, and where the road was at the time of the passage of said ordinance.

"3d. In 1891 the limits of Westport were extended over the territory which included that portion of the road described in said ordinance, and, thereafter, in 1897, such territory became part of Kansas City, Missouri, by an extension of its limits.

"4th. That portion of said Independence and Westport road mentioned in said ordinance has never been vacated, abandoned or closed, and no ordinance of any city or resolution of the county court was ever passed to that effect, but at all times since it was opened for use, about 1841, up to the time of the passage of said ordinance, it was actually open, and actually used as a public highway, thoroughfare, and passage-

way for the public as follows: Up to about the year 1887, it was used generally by the public; after said time and until about the latter part of the year 1897 the use by the public was not so general, because other streets in the general neighborhood had been opened; from the latter part of the year 1897 to the time the construction of the sewer hereinafter mentioned it was used by the people living upon what was called the Perkins or Flower tract, and by the Gamble family who lived in a small house east of the Perkins tract, such as tradespeople who had need to deliver merchandise there, and by visitors to said houses, and was open so as to be used by all of the public who had need to use it until about March, 1907, at which time it became impassable by reason of the construction of a sewer in said public highway.

"5th. That the land sought to be graded is a public highway; and that the only rights of the defendants, Richard Smith and Olivia Smith, therein are those of abutting property owners.

"6th. No claims for damages have been presented or filed, although the court now offers leave to defendants to file same, which defendants decline to accept."

Upon this finding of facts, the court held it had power and jurisdiction to act as provided in the charter of Kansas City respecting the grading of streets, and denied the defenses set up in the answers of defendants. To which action of the court in finding the facts aforesaid the defendants objected and at the time excepted. After judgment upon said finding and decision of the court, defendants, Richard Smith and Olivia Smith, duly filed their motion in arrest of judgment and for a new trial.

Both in their motions for new trial and in arrest, the defendants specifically complained of the refusal of the court to grant them a jury trial in this cause, and duly excepted to the action of the court in over-

ruling the said motions, and perfected their appeal to this court.

## OPINION.

I. The power to grade its streets and highways is regulated by the charter of Kansas City, Missouri, article 8, sections 1 to 16 inclusive, Charter and Revised Ordinances 1898, p. 126. In the enforcement of ordinances made for that purpose, the action of the circuit court is set in motion by filing therein a certified copy of the grading ordinance. Thereupon, notice by publication is given to all persons whom it may concern, fixing the time in which claims for damages must be filed or barred. The hearing of such claims is before six commissioners, who may hear evidence and visualize the property and report the actual damages or just compensation of the respective claimants "under such instructions as shall . . . be given them by the court or judge." Any person aggrieved may appeal. The article contains this further provision: "The proceedings herein shall in all respects not herein provided for conform as near as may be to the practice and procedure in civil cases." [Ibid., secs. 7 and 11.]

The specific issue presented by the filing of a claim for damages is the only one which may be tried in the circuit court by the six commissioners. The charter makes no express provision for the trial of any other issue. It was held, prior to the adoption of its present charter, that this single issue might be constitutionally referred to this board of six commissioners. [Kansas City v. Hill, 80 Mo. 523.]

It was also ruled that the use of five men as a jury or body of commissioners, appointed by the circuit court to assess damages sustained for the taking of property for the construction of a plank or macadamized road, did not contravene the provisions of the

Constitution on the right of trial by juries, since, in so acting the five commissioners were not performing the usual functions of a jury in civil or criminal trials; and, therefore, the Legislature did not violate the Constitution in providing that they should consist of a less number than twelve. [Railroad v. Pickett, 25 Mo. 535.]

In the case of State ex rel. v. Field, 99 Mo. 352, the question was whether or not the charter of Kansas City, adopted under authority of the Constitution on April 8, 1889, was controlled by the general provisions of the Act of the Legislature of 1885, which prescribed the method for the assessment of damages and benefits in grading and regrading streets in cities. The enabling act (constitutional provision permitting the adoption of this charter) declared that the charter adopted thereunder should supersede all laws then in force. The court ruled: ''This matter of assessing damages and benefits for grading and regrading streets naturally falls within the domain of municipal government. The Act of 1885, as amended, is one of those laws which the enabling act declares shall be superseded by the adopted charter. When the present charter of Kansas City became a law, the eighth article suspended and took the place of the general law of 1885.''

It may also be conceded that at common law the right of trial by jury in condemnation proceedings did not exist in the absence of constitutional or statutory provisions conferring such right. [St. Joseph v. Geiwitz, 148 Mo. l. c. 216, and cases cited.] This rule, however, has now been altered by the Constitution. [Art. 12, sec. 4.]

It is apparent that none of these cases nor any of the provisions of article 8 of the charter of Kansas City have any bearing whatever on the point presented for review by the appeal in this case, which is whether the defendants were entitled to a common law jury of

twelve men to try the issues raised in their separate answers as to the existence or abandonment of the road at the time the ordinance was enacted. The point of inquiry is, therefore, whether or not either of these issues was a jury question at common law at the time of the adoption of the Constitution of 1875. For, if so, then the action of the trial court in denying the defendants a trial by jury was error. The constitutional right of a jury trial has been defined and upheld in several recent rulings. In one of these, Lee v. Conran, 213 Mo. 404, Judge WOODSON, speaking for Division One of this court, and having under consideration the right of a defendant in a suit brought to quiet title to land to demand a trial of the issues joined by a jury, first defined the issues joined as a claim between a shore owner and an island owner for an accretion of land caused by the action of the river; he then held, the solution of the question was dependent on whether the parties were entitled to an ordinary judgment at law, for if this were the extent of the relief to which they were entitled, their right to a jury trial was absolute under the Constitution. The judgment was reversed and remanded for the refusal of the trial court to submit the case to a jury.

The question of a right to a jury trial was next presented to the court in a suit brought against a railroad for damages to crops. The defendants pleaded settlement. The plaintiff replied that the settlement and release were procured by fraud. The defendants insisted that the act of the Legislature permitting a reply so framed was unconstitutional in that it would result in the abolition of suits in equity for the exertion of its peculiar power to annul and cancel fraudulent acquittances and settlements. This contention was denied. On that subject, this court, speaking through GRAVES, J., in Division One, said: "This statute is challenged on the ground that it is violative of section 28, article 2 of the Missouri Constitution.

This section of the Constitution reads: 'The right of trial by jury, as heretofore enjoyed, shall remain inviolate; but a jury for the trial of criminal or civil cases, in courts not of record, may consist of less than twelve men, as may be prescribed by law. Hereafter, a grand jury shall consist of twelve men, any nine of whom concurring may find an indictment or a true bill.' The defendant after invoking this section of the Constitution, says that it is entitled to a trial by a chancellor where there has been executed a release, which is pleaded in bar of an action, and fraud in the execution thereof is alleged by the plaintiff, and that this statute violates its constitutional right in that it forces the trial of that issue to be before a jury. The Constitution says, 'The right of trial by jury, as heretofore enjoyed, shall remain inviolate.' In discussing that right we have held it to mean that such matters as were triable by jury prior to the Constitution of 1875, could not be shifted to the equity side of the court. In other words, the status of what must be tried by a jury was fixed by the conditions existing at the time of the adoption of the Constitution." [Berry v. Railroad, 223 Mo. l. c. 366.]

He then analyzed the cases bearing on the triability of questions of fraud in common law courts, and held that an issue as to the fraudulent procurement of such release was a jury question at common law, and concluded his discussion in the following language: "So that prior to this statute, and without considering the statute, this court has held that fraud in the procurement of a release was properly pleaded in a reply and properly triable before a jury. The statute therefore does not go further than this court had done about the time of the passage thereof. The statute does not undertake to abolish all equitable jurisdiction, and has never been so considered by bench or bar."

The action of the lower court in submitting that issue to the jury was affirmed.

The case was next presented to this court in a suit to recover the value of a tract of land which it was alleged was used and appropriated by the defendant railroad for a right of way and other railroad uses. The answer was a general denial, coupled with a counterclaim alleging various equitable defenses and praying for affirmative relief. The court held that the right to join both defenses in the same answer was well settled, and further, that it was also ''equally well settled law that the filing of an answer in a law case setting up equitable matter *in pais* entitling the defendants to an affirmative relief and praying for such relief, convert the case from one at law to a suit in equity.'' [Withers v. Railroad, 226 Mo. l. c. 397.] And holding also that this would not be the case unless the equitable defense set up in the answer was such as to entitle defendant to affirmative equitable relief, and prayer therefor was contained in the answer; that the mere insertion of an equitable defense without more would not convert the legal action into an equitable one. [Ibid., l. c. 396.] In that case the action of a lower court in refusing a jury was affirmed solely on the ground that the case under the above rulings had been converted from one at law to one in equity.

This question of a right to a jury trial was recently considered by this Division in the case of Frowein v. Poage, 231 Mo. 82. That was a proceeding under the statute for the quieting of title, and the dispute between the parties arose as to which was the owner of an accretion or increase of land formed between their respective properties by the action of the Mississippi river. Judge GANTT, speaking for this Division, on page 89, said: ''There were no equities pleaded, either in the plaintiff's petition and reply or the defendant's answer, nor did the evidence tend to show a right in equity on either side. It was a plain contest at law, a question of fact, as to which tract the new made land in controversy herein was an ac-

cretion. In a word, the issue was one of accretion alone. Was it an accretion to plaintiff's lands on the west shore of the river, or was it an accretion to defendant's island? In the face of these undeniable facts there can, we think, be no doubt that the defendant was entitled to a jury and that the court erred in denying a jury trial. [Lee v. Conran, 213 Mo. 404; Berry v. Railroad, 223 Mo. 358; Withers v. Railroad, 226 Mo. 373.] The pleadings and the evidence required nothing but a plain judgment at law either for plaintiff or defendant. But plaintiff insists defendant has not saved this point in such a manner as to entitle him to complain of the error of the circuit court in denying him a jury trial. . . . There was no waiver of this right.''

He held that the right to demand a jury trial was not waived by failure to renew the same in the motion for new trial or motion in arrest, since error was only shown on the record proper; and, therefore, available, although not made the ground of motion for new trial or motion in arrest, since all defects in the record proper may be taken advantage of for the first time in a court of last resort.

The foregoing decisions clearly show that parties to legal proceedings cannot be deprived, without their consent, of a trial by jury, composed as at common law, of any issue of fact for the trial of which it was necessary to call a jury when the first Constitution of this State was adopted. At that time, a jury of twelve men, unless waived by the parties, was necessary for the trial of all issues of fact arising in legal actions or proceedings. Juries were not called in suits of equity unless the chancellor of his own motion saw fit to submit some issue of fact to them, in which event it was competent for him to take the advice of a jury; but the findings of the jury on such issues were simply advisory and might be wholly disregarded by the chancellor when he came to render a decree in the cause.

Juries are also dispensed with as to all issues which the trial court can compel to be submitted to a referee. Aside from these general exceptions and the former right of the Legislature to submit to a body of less than twelve men the issue of compensation in condemnation proceedings (now altered by the Constitution) the right to demand a jury as to all other issues is guaranteed to all litigants by the Constitution and statutes of this State. [Const. 1875, art. 2, sec. 28; Const. 1875, art. 12, sec. 4; R. S. 1909, secs. 1968-1996.]

II. The question of the abandonment of a public road or highway is not an issue for a chancellor or a referee, but is peculiarly one of fact for a jury and determinable by evidence of matters *in pais*. [Elliott on Roads and Streets (3 Ed.), sec. 1172; State v. Culver, 65 Mo. l. c. 609; R. S. 1899, sec. 9472; R. S. 1909, sec. 10446.]

In this case the defendants filed no claim for damages as owners of abutting property, but set up the sole defense that there was no existing road; that the highway referred to in the ordinance had been wholly abandoned by the public and that the city had never acquired any easement therein for street or road purposes and that the ordinance was therefore a mere *"brutum fulmen"* without any basis for its operation or enforcement.

The learned trial judge correctly ruled that the validity and operative force of the ordinance depended upon the fact of the existence or the abandonment of the road therein referred to when the ordinance was enacted. This was a correct view of the case, for it would be absurd to hold that a city had power to grade a road, either before its establishment or after its abandonment. The learned trial judge treated the issue of abandonment as presenting a question of fact which must be tried before he could proceed to enforce the grading of the road. This was an accurate conception of the issues presented by the answers of de-

fendants. The error which supervened was the denial to defendants of the right to have that issue tried by a common law jury of twelve men. If the issue of abandonment tendered by defendants was triable at all in the present proceeding, it was clearly one upon which they were entitled to have a jury called. Hence, the trial judge erred in denying that right and assuming to act as a jury himself without the consent of the parties. The only doubt which might have arisen was as to whether it was competent for the defendants to inject this issue in the present proceeding or whether they should have resorted to an independent action to prevent the enforcement of the ordinance and to assert their title to the property in question. Instead of so doing the defendants entered their appearance in the present proceedings, and by their pleadings therein requested the court to submit the issue of abandonment to a jury. This action would have concluded the defendants from any subsequent assignment of error for a ruling invited by them. Besides, it was neither impracticable nor inconvenient to submit an issue of that sort to a jury in a proceeding like the present. This has been constantly done under the present Constitution in the somewhat analogous procedure for the condemnation of property without working any difficulty or embarrassment either in practice or procedure. An inspection of the provisions of the charter of Kansas City will show that it recognizes the probability of other things being required to be done than those specifically mentioned, for it contains a clause requiring the proceedings as to such other matters to be conformed to the general practice and procedure in civil actions. The charter deals only with the usual issues as to the right of abutters to claim damages for grading streets. As to the steps that are necessary to be taken when other claims than damages are made, such as the claim that there was no such street or that it

was abandoned by the public, the charter makes no specific regulations. This silence of the charter would serve to bring the general code of civil procedure into play, even if the charter did not provide (as it does) that "the practice and procedure in civil cases" should apply in all other cases than those which it expressly covered.

III. Our conclusion is that the defendants were entitled to have the issue of abandonment, set up in their answers, tried as if made in an ordinary legal action wherein it was asserted as a defense, and that it should have been submitted to a common law jury of twelve men. The law designs to avoid circuity of action. This can be done by permitting the defendants in this case to have a jury trial as to the issues of fact presented in their answers. If the verdict of the jury should be against them, the court may then proceed to enforce the ordinance as directed in the charter; and the defendants will be concluded by the adjudications invoked in their answers from thereafter bringing an independent suit to recover the property or establish a title thereto.

For these reasons the verdict and judgment herein will be set aside and reversed, and the cause remanded for further proceedings in conformity with this opinion. *Roy, C.*, not sitting.

PER CURIAM.—The foregoing opinion of BOND, C. (while sitting in Division No. 2), is adopted as the opinion of the court.