NATHANIEL SHANKLIN, Appellant, v. RICHARD E. BOYCE et al.

### Division One, June 4, 1918.

1. **GUARDIAN AND CURATOR: Appointment: Insane Person: No Notice.** The appointment by the probate court of a guardian of the person and curator of the estate of an insane person, without notice of the proceedings to such person, is void; and the sale of the real estate of an insane person by a curator appointed without such notice is likewise void. That part of the statute (Sec. 476, R. S. 1909) which permits the court to adjudge a person insane and to appoint a curator or guardian after having "spread upon its record of its proceedings the reason why such notice or attendance was not required" does not constitute due process of law, is unconstitutional and void. [Following and approving Hunt v. Searcy, 167 Mo. 158.]

2. ———: ———:. ———: **Uselessness of Notice.** The suggestion that a notice of a lunacy inquiry to an insane person is useless and meaningless begs the question; for the issue to be tried is whether he is or is not insane, and to fail to give him notice on the ground that he is insane forestalls the very purpose of the inquest.

3. **RECOVERY OF PROPERTY: By Person Adjudged Insane Without Notice: Equity.** Since it is necessary for a person who has been adjudged insane without notice to resort to extrinsic facts, in order to show that the appointment of his curator was void and that the sale of his real estate by said curator was void, he is not relegated to an action of ejectment to recover his property, but may resort to equity in the first instance.

Appeal from Grundy Circuit Court.—*Hon. Geo. W. Wanamaker*, Judge.

REVERSED AND REMANDED.

*O. M. Shanklin, John W. Bingham, J. D. Allen, J. M. Davis & Son* and *Hubbell Bros.* for appellant.

(1) While plaintiff was insane, confined in a hospital in St. Louis, the probate court conducted an

inquisition of insanity concerning him, and appointed a guardian of his person and estate, without notice to him, without his having any knowledge of it. Plaintiff contends that this original insanity inquisition is wholly void in law, for want of notice to him. Hunt v. Searcy, 167 Mo. 158; Bank v. Shanklin, 174 Mo. App. 642; In re Lambert, 66 Pac. Rep. 851, 134 Cal. 626; Wilcox v. Phillips, 260 Mo. 664; Wheeler v. State, 32 Am. Rep. 372, 34 Ohio St. 394; In re Letcher, 269 Mo. 148; Hovey v. Elliott, 167 U. S. 409; McCurry v. Hooper, 46 Am. Dec. 280, 12 Ala. 823; Evans v. Johnson, 45 Am. St. 912, 39 W. Va. 299; Walters v. McKinnis, 221 Fed. 746; Cooley, Const. Lim. (7 Ed.) p. 581; Martin v. White, 146 Fed. 461; Stewart v. Taylor, 63 S. W. 783, 23 Ky. L. Rep. 577, 182 U. S. 427; Chaloner v. Sherman, 242 U. S. 455; State ex rel. v. Duncan, 195 Mo. App. 541; State ex rel. v. Guinotte, 257 Mo. 1; Smoot v. Judd, 184 Mo. 508; McGee v. Hayes, 59 Pac. 767, 127 Cal. 336; Hutchins v. Johnson, 30 Am. Dec. 622, 12 Conn. 376; 10 Am. & Eng. Ann. Cas., p. 213; 16 Am. & Eng. Ency. Law (2 Ed.) p. 567. (2) *Caveat emptor* applies to any judicial sale. For a stronger reason it applies to the sale of the land of an insane person in ward, by his alleged guardian—and applies more strongly to this particular case, being one in which the vendee made an exchange or trade, in substance—instead of making a purchase for money. 21 Cyc. 145, 146; Stone v. Railroad, 261 Mo. 61; Estes v. Alexander, 90 Mo. 453; 17 Am. & Eng. Ency. Law (2 Ed.), p. 1010; Union Trading Co. v. Drach, 146 Pac. (Colo.) 767; Frost v. Atwood, 16 Am. St. 560, 73 Mich. 67; Buchanan v. Edmisten, 95 N. W. (Neb.) 620. (3) The inquisition of insanity is subject to collateral attack because it is void for want of notice. Dutcher v. Hill, 29 Mo. 271; Webster v. Reid, 11 How. (U. S.) 437; Hunt v. Searcy, 167 Mo. 158; Evans v. Johnson, 23 L. R. A. 737. (4) The trial judge, sitting as a chancellor in equity, erred in holding that plaintiff is not entitled to recover "in this form of action." Houtz v.

Hellman, 228 Mo. 635.  (5) If the trial judge was correct in holding that the form of action of the plaintiff is defective and illegal, then, the trial judge should have dismissed the plaintiff's suit, only—should not have rendered judgment against the plaintiff on the merits.  Humphreys v. Atlantic Milling Co., 98 Mo. 542; Barnett v. Smart, 158 Mo. 167; Lacassagne v. Chapuis, 144 U. S. 119.

*J. W. Peery* and *A. G. Knight* for respondents.

(1) In Hunt v. Searcy, 167 Mo. 158, the court held Sec. 476, R. S. 1909, to be unconstitutional, but said case fails to recognize fundamental principles later recognized by this court in State ex rel. v. McQuillin, 151 S. W. 446; Whittelsey v. Conniff, 266 Mo. 567; State ex rel. Paxton v. Guinotte, 257 Mo. 1, and previously recognized by this court in Dutcher v. Hill, 29 Mo. 271; In the Matter of Marquis, 85 Mo. 615; In the Matter of Crouse, 140 Mo. App. 545. Secs. 482, 519 and 520, R. S. 1909, constitute a scheme and mode of procedure for the adjudication of insanity that is perfectly constitutional. This scheme has existed in the statute laws of this State from our admission into the Union to the present hour. This scheme in fact copies after and is closely analogous to the procedure of the common law. From the days of the Great Charter until the Lunacy Regulation Act of 1853, notice of an inquisition was not necessary, and it is within the competency of a State, by its legislation, to dispense with the same, providing the unfortunate may at any time demand and receive a trial under some provision of the statute. The decrees of probate courts adjudging persons to be of unsound mind, are not like ordinary judgments. They are not final, and are not to be treated as final judgments. They remain *in fieri*, like a cause pending, and may be reopened and set aside at any subsequent term of the court, whenever the insane person shall be restored to his right mind. The fundamental errors in

Hunt v. Searcy, consist in treating these judgments and applying the same rules and tests to them as are applied to ordinary judgments. 10 Am. & Eng. Ency. Law 287; 3 Words & Phrases, 2227. The term "due process of law" is almost universally held to be synonymous with "law of the land" and is therefore lineally decended from Magna Charta. 3 Words & Phrases, 2228; 10 Am. & Eng. Ency. Law 290; 8 Cyc. 1083; Minor v. Happersett, 21 Wall. (U. S.) 162; Weimer v. Bunbury, 30 Mich. 201; Wulzen v. San Francisco, 101 Cal. 15, 40 Am. St. 17; Minor v. Happersett, 21 Wall. 162; Ballard v. Hunter, 204 U. S. 241; Attorney General v. Jochim, 99 Mich. 358, 41 Am. St. 606. "Formerly, under the English practice in lunacy, the proceedings upon the writ *de lunatico inquirendo* were *ex parte,* the alleged lunatic not being entitled as of right to notice thereof, since the proceedings were had for the information of the court, which might refuse to issue a commission, or might supersede a commission once issued, so that the right of the party to have the question of his insanity passed upon by a jury of the country in a court of law was to be exercised, if at all, upon a traverse of the inquisition. Although the party's right to traverse the finding of the inquisition appears to have been doubted or reluctantly admitted in some of the earlier cases, it was clearly established in the leading case of Cumming *in re* in which St Leonards, C., reviews the authorities in an elaborate opinion." 1 De G. M. & G. 537; 21 L. J. (N. S.) ch. 753; Jur. 483; Bridge, in re, Cr. & Ph. 338; Cumming, in re, the Chancellor St. 2 & 3 Edw. VI., ch. 8, sec. 6 (See also remarks of ELDON, C., in Ward ex parte, 6 Ves. 579; Staunton on the King's Prerogative, cap. 20, Traverse, p. 68.); Fust in re, 1 Cox 418; Wragg at ex parte, Ferne ex parte, 5 Ves. 450, 832; Sherwood v. Sanderson, 19 Ves. 280; Neville in re, Crawf. & Dix. Abr. Notes 55; Bridge, in re, Cr. & Ph. 338. This continued to be the settled law of England until the enactment of the Lunacy Regulation Act in 1853, which provided for

notice to the alleged incompetent, if he resided in the jurisdiction of the court, and which limited the absolute right of traverse to a period of three months after the finding of the inquisition. 16 & 17 Vic., ch. 70, secs. 148, 149; Buswell on Insanity, sec. 71; Woerner on Guardianship, 391; 22 Cyc. 1124, 1131; 10 Pl. & Prac. 1202. It therefore clearly appears that by the common law of England, prior to the Lunacy Regulation Act of 1853, inquisitions of insanity were regarded purely as proceedings *ex parte;* that notice to the alleged incompetent, though sometimes given, was never required, and that the findings of such inquisitions were never conclusive upon him, but were always open to attack. Buswell on Insanity, p. 33, sec. 23; Woerner on Guardianship, p. 382. It must be conceded, therefore, that if the subject of an inquisition of insanity ever had an absolute statutory right to notice of the proceedings, that right must be derived from the provisions of the Statute of 1835, requiring that he be brought before the court. In Hunt v. Searcy, 167 Mo. l. c. 177, MARSHALL, J., appears to have been of the opinion that a compliance with this provision of the statute would have been the legal equivalent of notice; but this view involves a fundamental misconception of the purpose and effect of 'the statute. It is inconceivable that the presence of a party under compulsion could ever be held a legal substitute for notice, where notice is required. So far from it being equivalent to notice, compulsory attendance may well be calculated to defeat the very purpose for which notice should be given. Woerner on Guardianship, 400; Whitenack in re, 3 N. J. Eq. 252; Morton v. Sims 64 Ga. 298. Inquisition of insanity is primarily an *ex parte* proceeding. The commission and jury might require the attendance of the subject of the inquiry and he might appear voluntarily, but in neither event did his presence make the finding of the inquisition conclusive upon him. His right to traverse the finding is in no way affected by the question of notice, or of his pres-

ence at the proceeding. When his attendance was re-
quired, it was rather in the capacity of a witness than
as a party to the suit. His presence was regarded
merely as an instrument of evidence by which the
fact in issue might most properly be established. In
fact, in some instances the question of sanity was
formerly determined by inspection alone. 2 Cooley's
Blackstone (3 Ed.), p. 331. This being the state of
the law at the time of the enactment of Section 2,
page 323, R. S. 1835, it is clear that the provision
with respect to compulsory attendance of the subject
of the inquiry could never have been intended as a
substitute for, or as the equivalent of notice. It fol-
lows, therefore, that neither by the common law nor by
statute has an alleged insane person ever had an abso-
lute right to notice of the inquisition. Nor did he have
any constitutional right to such notice. Weimer v.
Bunbury, 30 Mich. 201; Eames v. Savage, 77 Me. 212,
52 Am. Rep. 751; 10 Am & Eng. Ency. Law, p. 295;
Eames v. Savage, 52 Am. Rep. 752; Ex Parte Marma-
duke, 91 Mo. 228; Humes v. Railroad, 82 Mo. 221;
Railroad v. Humes, 115 U. S. 512; Railroad v. Evans,
85 Mo. 307; State v. Schenk, 238 Mo. 429; State ex rel.
Kiel v. Riechmann, 239 Mo. 81. "These cases in-
dicate that personal notice to the alleged lunatic is
not regarded as a jurisdictional necessity in England.
This accords with the statement of Shelford in his
Work on Lunacy that in ordinary cases notice is not
given to the party 'inasmuch as such proceedings are
*ex parte* and not conclusive.'" Evans v. Johnson, 23
L. R. A. (W. Va.) 737, Ex Parte Cranmer, 12 Ves. Jr.
445; Ex Parte Southcot, 2 Ves. Sr. 401; Ex Parte Hall,
7 Ves. Jr. 261; Re Lanwarne, 46 L. T. N. S. 668;
Buswell on Insanity, secs. 54, 71, 72; Woerner's
American Law of Guardianship, sec. 119; Bumpus v.
French, 60 N. E. (Mass.) 414; In re Dowdell, 47 N.
E. (Mass.) 1. c. 1033; Ex parte Dagley, 128 Pac.
(Okla.) 699; In re Crosswell, 28 R. I. 137, 13 Am. &
Eng. Anno. Cas. 874; Ex parte Scudamore, 46 So.
(Fla.) 279; Sporza v. Ger. Sav. Bank, 192 N. Y. 8;

People ex rel. Peabody v. Chanler, 117 N. Y. Supp. 322; McNamara v. Casserly, 61 Minn. 335, 343; Henning v. Stead, 138 Mo. 430; City of Kansas v. Huling, 87 Mo. 203; Newark & S. O. H. R. Co. v. Hunt, 12 Atl. 697; Miller v. Horton, 152 Mass. 540, 10 L. R. A. 116, 23 Am. St. 850; In re James, 30 How. Pr. 446; Ex Parte Brown, 1 L. R. A. (N. S.) 540; Embree v. K. C. Liberty Blvd. Rd. Dist., 166 S. W. 282; Shively v. Lankford, 174 Mo. 535; Marshall v. Standard, 24 Mo. App. 192, 196, 197. The constitutional provisions invoked in this case are not applicable to insanity cases, and the statutory provisions that notice may be dispensed with, has been expressly held constitutional. Chavannes v. Priestley, 80 Iowa, 316, 9 L. R. A. 19. The foregoing has received the tacit consent of Bumpus v. French, 60 N. E. 414; In re Dowdell, 47 N. E. 1033; approved in Woerner on Guardianship, 392, and Dutcher v. Hill, 29 Mo. 271; State ex rel. v. McQuillin, 151 S. W. 444; Same case, 171 Mo. App. 106; State ex rel. Paxton v. Guinotte, 257 Mo. 1; Whittelsey v. Conniff, 266 Mo. 561. The plaintiff by going into the probate court, submitting himself to its jurisdiction and having himself restored and adjudged sane, thereby acknowledged and ratified the proceedings of such court in adjudging him insane and appointing his guardian, and is therefore estopped from urging any irregularities in such proceedings. Dutcher v. Hill, 29 Mo. 274; Howard v. Lansbergs Committee, 60 S. E. (Va.) 769; Packard v. Ulrich, 67 Atl. (Md.) 246; Robertson v. Smith, 15 L. R. A. 273; In Re Blewitt, 30 N. E. (N. Y.) 587; Corbett v. Physicians' Casualty Assn. of American 115 N. W. (Wis.) 265, 16 L. R. A. (N. S.) 177; Nanson v. Jacob, 93 Mo. 344; Fischer v. Siekmann, 125 Mo. 165; Pockman v. Meatt, 49 Mo. 345; Boogher v. Frazier, 99 Mo. 325; Proctor v. Nance, 220 Mo. 104; Hector v. Mann, 225 Mo. 244. If the plaintiff could come into a court of equity and plead that on the 11th day of March, 1896, he was by a judge of the probate court of Grundy County, Missouri, adjudged insane and a guardian appointed over him, and that he had no

notice thereof, and that his property in consequence thereof had been taken from him and his liberty restrained, when in truth and in fact he was not insane, then a case would be presented appealing to the equitable powers of the court, showing an injury and wrong—a case for equitable jurisdiction. But, instead of this, the plaintiff comes into a court of equity asking relief against a judgment adjudging· him insane, and at the same time in his petition alleging that as a matter of fact he was insane. His pleading, at most, shows but a technical violation of his legal rights, but instead of accompanying such allegation with the further jurisdictional clause, that the act complained of was contrary to equity, and that he had suffered injury thereby, the allegation is to the contrary thereof—that he was actually insane, and affirmatively shows that he could not have sustained injury. In other words, these allegations and the presence of the facts they allege, to-wit, that Shanklin was at all times mentioned actually insane, make the pleadings as well as the facts of the case, fail for the "want of equity." The bill must show that plaintiff has sustained or will sustain some substantial injury, by reason of the facts complained of, and not by general averment, but by specific facts. 16 Cyc. 235, par 6; Willingham v. King, 23 Fla. 478; Kearney v. Andrews, 10 N. J. Eq. 70; Parker v. Winnipiseogee Lake Cotton & Woolen Co., 2 Black 545, 17 L. Ed. 333; Williams v. Hagood, 8 Otto, 72, 25 L. Ed. 51; Stille v. Hess, 112 Mich. 678, 71 N. W. 513. If the want of notice rendered the proceedings void, or the form of the sale rendered them void, as contended for by plaintiff, and that such proceedings may be attacked collaterally, as contended for by plaintiff, then plaintiff had a plain, adequate and complete remedy at law, and a common law action in equity to remove a cloud upon title, is not maintainable. Benton Co. v. Morgan, 163 Mo. 661; Planet Property & Finan. Co. v. Railroad, 115 Mo. 619; Walker v. Railroad 57 Mo. 275; Han. & St. Joe. Railroad Co. v. Nortoni, 154 Mo. 142; McKee v.

Allen, 204 Mo. 655; Groc. Co. v. Clark's Exrx., 79 Mo. App. 405; Church v. Church, 73 Mo. App. 421; Glaves v. Wood, 87 Mo. App. 92; Humphreys v. Atlantic Mill. Co., 98 Mo. 548; Railroad v. Reynolds, 89 Mo. 146; Christian v. City, 127 Mo. 109; Stockton v. Ranson, 60 Mo. 539; Michael v. City, 112 Mo. 614; Russell v. Lumber Co., 112 Mo. 40; Faris v. Moore, 256 Mo. 129; Fontaine v. Hudson, 93 Mo. 62; Graves v. Ewart, 99 Mo. 13; Capitain v. Miss. Valley Trust Co., 177 S. W. 632; Neil v. Tubb, 241 Mo. 674; Weston v. Fisher, 180 S. W. 1039. Berry, the guardian who made the guardian's deed, and which deed is sought to be cancelled by plaintiff, not having been made a party to the suit, and not being before the court, the court will be without authority to cancel the deed from him to defendant. Dunklin Co. v. Clark, 51 Mo. 60; Clark v. Covenant Mut. Life Ins. Co., 52 Mo. 272; Han. & St. Joe. R. R. Co. v. Nortoni, 154 Mo. 142. Judge Scott said as long ago as 1860, and whose words have not been doubted in any subsequent decision, on that question, that "After considerable examination, we have not been able to find a single case in which it has been held that the validity of a sale of land of a supposed lunatic, made by his guardian. can be attacked in a collateral proceeding on the ground of the want of notice of taking the inquisition by which the supposed lunatic was found to be such." Dutcher v. Hill, 29 Mo. 273; Freeman v. Thompson, 53 Mo. 193; Johnson v. Beazley, 65 Mo. 250; Henry v. McKerlie, 78 Mo. 416; Noland v. Barrett, 122 Mo. 181; Brawford v. Wolfe, 103 Mo. 391. Long v. Mining Co., 68 Mo. 433; Blickensderffer v. Hanna, 231 Mo. 93; Cox v. Boyce, et. al., 152 Mo. 583; Higbee v. Bank, 244 Mo. 411; Decker v. Fessler, 146 Ind. 16.

BOND, P. J.—1. In January, 1911, the plaintiff filed his amended petition, making Richard E. Boyce and Grundy County, Missouri, defendants, alleging that he became insane on November 26, 1895, and remained in

**Statement.** that condition until July 15, 1910, when his reason and understanding were fully restored; that at the time of his becoming insane he owned certain real estate described in his petition; that ön December 28, 1896, one C. L. Berry, assuming to be the guardian of the person and estate of the plaintiff, unlawfully and fraudulently took possession of said property and attempted to sell and convey the same to Richard E. Boyce, for the purported consideration of $18,000, and made and delivered to said Boyce a guardian's deed to said property, now of record in the Recorder's office of Grundy County; that the grantee took possession of the property and continued so to hold the same in fraud of plaintiff's rights; that said grantee, on March 6, 1917, borrowed certain county funds to the amount of $4,000, and executed a mortgage to secure the same, with full knowledge on the part of both said Boyce and the parties making the loan, of the insane condition of plaintiff at that time; alleged that these transactions were clouds upon his title, which he prayed should be set aside and annulled, and that possession of said property should be restored to him, and for an accounting of rents and profits and a judgment therefor.

A demurrer was overruled and after answer and adduction of evidence the trial court rendered a judgment in favor of defendants, from which plaintiff has duly appealed.

II.   Under the evidence in this case no question existed as to the fact and duration of the insanity of the plaintiff, nor as to the complete restoration of his faculties, as stated in his second amended petition. **Notice.** Nor is it denied that the proceedings for the appointment of his guardian were had and conducted without any notice whatever to the plaintiff and without his personal presence in the probate court at the time of the alleged inquisition. That portion of Section 476, Revised Statutes 1909, which permits the appointment of a guardian or curator of insane per-

sons, without notice given to the alleged insane person, was held unconstitutional in Hunt v. Searcy, 167 Mo. 158, after a full review of the authorities in this State and a clear discussion of the terms of the statute and the constitutional rights of persons affected thereby. The able author of that opinion buttressed his conclusion upon elemental propositions of law as enunciated by the Supreme Court of the United States, and in applying the result of these deductions to the construction of said statute ("Section 476: In proceedings under this article, the alleged insane person must be notified of the proceeding unless the probate court order such person to be brought before the court, or spread upon its records of its proceedings the reason why such notice or attendance was not required" R. S. 1909.) Held that its alternative provisions for notice were void. The court then added;

"It is too clear for argument that this qualification and attempted authority for depriving the accused of his liberty or property without notice violates both the State and Federal Constitutions, and does not constitute 'due process of law.'

"But one reason can be suggested for not serving the person to be tried with notice, and that is, that as he is insane, a notice to him would be useless and meaningless. This argument begs the question; for the issue to be tried is whether he is insane or not, and to fail to give him notice, for this reason, is to forestall the very purpose of the inquest. But even if he be a raving maniac, he can appear by attorney or through his friends and see that a proper person is appointed guardian or that proper care is given to his property and to his person. In addition, what if the person was not really insane at all, and without notice was adjudged insane and confined in an asylum and the management of his property given to another? In such contingency the propriety of notice would be manifest and if given would defeat the recovery of a judgment. It will not do to say that in the fifty-seven years that these provisions, not requiring notice, have

been on the statute books, no instance is recorded of any sane person being so adjudged and deprived of his liberty or property, and that instances of such outrages are found only in highly-colored and improbable stories in works of fiction; for the Marquis case (85 Mo. 615) is an instance in our own reports where a citizen was so adjudged insane, without notice, and at the very next term of court appeared and proved that he was not and never was insane. But however the past experience may have been, the fact remains that the possibility of such an outrage being perpetrated is afforded by the statutory provisions referred to, and it is the duty of the courts, whenever the question arises, to prevent the happening of such a wrong, by declaring those provisions to be unconstitutional.'' [167 Mo. l. c. 182-3.]

We are contented with the conclusion expressed in Hunt v. Searcy and adhere to the reasoning of that case, despite the fact of the decisions in other jurisdictions of a contrary nature quoted in the brief of respondent.

It follows that the appointment of Berry as guardian of plaintiff was void and vested him with no title to the property beclouded by his deed to defendants.

III. As it was necessary in this case to resort to evidence of extrinsic facts, in order to show that the deeds purporting to convey plaintiff's property were **Equity.** void, and that the appointment of the guardian was void, plaintiff is not relegated to an action of ejectment to recover his property, but may resort to equity in the first instance. Thompson v. Pinnell, 237 Mo. l. c. 552, et cases cited.]

The judgment in this case is reversed and the cause remanded to be proceeded with in a manner not inconsistent with the views herein expressed. All concur.