MAUDIE ROARK USSERY v. R. C. HAYNES, ROBERT L. HYATT, C. B. DAVIS, I. H. SMITH and C. W. PIPER, Appellants.—127 S. W. (2d) 410.

Division Two, April 20, 1939.

*Rasse & Brown* for Robert L. Hyatt, C. B. Davis and I. H. Smith; *Walker Pierce* for C. W. Piper; *Montgomery, Martin & Montgomery* for R. C. Haynes.

*Russell Garnett* for respondent.

COOLEY, C.—Appeal by defendants from an order of the circuit court sustaining plaintiff's motion for new trial. The action is for false imprisonment. It was instituted in the circuit court of Saline County and sent on change of venue to Howard County, where it was tried. Plaintiff's petition was in two counts, each praying $10,-

000 actual damages, the first being for false imprisonment and the second for malicious prosecution, and named seven defendants—the five appellants and J. S. Ussery, plaintiff's husband and Ralph Hanks, Superintendent of the State Hospital for the Insane, at Fulton, Missouri. Before trial plaintiff dismissed as to the second count and also dismissed the action as to J. S. Ussery, and during the trial dismissed as to Ralph Hanks, leaving the action to proceed on the first count against the five remaining defendants, R. C. Haynes, who was then county physician of Saline County, Robert L. Hyatt, C. B. Davis and I. H. Smith, judges of the county court of said county, and C. W. Piper, county clerk and clerk of said county court, who are the appellants here. We shall refer to the plaintiff respondent as plaintiff and to the appellants as defendants. The cause was tried to a jury, which returned a verdict for defendants. The court sustained plaintiff's motion for new trial on the ground, stated of record, of "conflicting and erroneous instructions given to the jury."

The alleged false imprisonment complained of was the confinement of plaintiff for something over two months in the State Hospital for the Insane at Fulton, pursuant to an adjudication of insanity by the County Court of Saline County made on May 15, 1935. Plaintiff contends that the proceedings leading to her confinement were illegal and void. Her petition, *inter alia*, alleged, in effect, a wrongful conspiracy among the defendants and that they acted maliciously, but during the trial, when defendants were offering evidence tending to show that there had been no conspiracy, she announced, through her counsel, that "she is not relying upon a conspiracy between the defendants;" and she also, by leave of court, struck out of her petition the allegations of malice. And we add here, there was no evidence tending to show malice or intentional wrongful conduct on the part of any of the defendants, nor was there any evidence of conspiracy. It is apparent from the record before us that plaintiff and the trial court proceeded below on the theory that the proceedings in the county court and the adjudication of insanity were invalid and that therefore the defendants, or any of them who had anything to do with plaintiffs confinement, were liable as for false imprisonment regardless of whether or not they acted in good faith and without malice and regardless of whether or not plaintiff was in fact insane and a fit subject for treatment in said hospital. Defendants offered evidence to prove that such were the facts but the court refused to admit it. Plaintiff's main instruction, submitting the case, was framed on that theory and the same theory was reflected in the court's refusal of instructions requested by defendants. It will be necessary for us to determine, first, whether there was a valid adjudication of insanity against plaintiff, and second, if there was not, whether, because thereof, the defendants are liable in this action. The determination of those questions requires a statement of the facts relative to said adjudication.

At the times in question plaintiff was a married woman, living with her husband on a farm in Saline County. She and her husband had four children, married and living elsewhere in homes of their own. On May 14, 1935, said four children, with the spouses of some of them, met at plaintiff's home, she and her husband being there. The court rejected evidence as to the reason for that meeting. On that day plaintiff's husband, J. S. Ussery, made and filed with the county court a statement in writing, as follows:

"Petition to County Court to Send Patient to State Hospital.

"To the Honorable County Court of Saline County, Missouri:

"The Undersigned, a citizen residing in the county and state aforesaid, hereby states that Maudie Ussery of Malta Bend, Mo., is insane, that her insanity is of less than 1 year's duration; that she has not estate sufficient to support her at a State Hospital, and is a resident of said county and State aforesaid.

"These facts can be proven by J. S. Ussery and Dr. R. C. Haynes a respectable physician.

"This 14 day of May, 1935.

"(Signed) J. S. Ussery."

The court thereupon caused to be issued and delivered to defendant R. C. Haynes, to be served upon plaintiff, the following notice:

"In the County Court of Saline County, Missouri

"May aj'd Term, 1935.

"To Maudie Ussery:

"You are hereby notified that an information in writing, subscribed and sworn to, has been filed in this Court, said Information alleging that you are a person of unsound mind and incapable of managing your affairs, and that an inquiry will be had and the evidence heard touching the condition of your mind, before the County Court of Saline County, Missouri, at its office 9:00 o'clock in the City of Marshall, Saline County, Missouri, on the 15th day of May, 1935, at which time you are entitled to be present at said hearing, and be represented by counsel.

"Given under my hand and seal of said office this 14 day of May, 1935.

"(Signed) C. W. Piper

"Clerk of County Court.

"(Seal)                                        by A. G. Cameron, D. C."

At the same time the court requested Dr. Haynes (who was county physician) to examine Mrs. Ussery as to her mental condition. Dr. Haynes proceeded to the Ussery home and, according to his testimony, examined Mrs. Ussery, concluded that she was insane, served the notice by twice reading it to her, and on the same day made the following return thereon:

"Return

"I, the undersigned, Robert C. Haynes, County in the State of Missouri, do hereby certify that I served the above Notice in Person

on the above alleged insane person on this the 14 day of May, 1935, in the County of Saline and State of Missouri, by reading the same to the said——and delivering to——————a copy thereof.

"(Signed) Robert C. Haynes
"Saline County, Missouri."

While it might be thought from his return, as made and signed by him, that he delivered a copy of the notice to Mrs. Ussery and neglected to fill in the blank space in the return (probably a printed form) by writing her name therein, the oral evidence indicates that he did not leave a copy. He testified that he read it to her twice and explained to her in detail what it meant, but he did not say he left a copy, nor that he had been furnished a copy. Plaintiff's children testified that he read the notice to their mother twice, but none mentioned that he left a copy. That particular point was not being stressed by plaintiff at the trial, which may account for the proof thereon not being entirely clear but we conclude from the record as a whole that Dr. Haynes did not deliver a copy of the notice to Mrs. Ussery.

At the time named in the notice, on May 15, 1935, the county court, being duly in session, all three judges being present and sitting, held a hearing, and entered of record its finding, judgment and order, as follows:

"And now it appears to the court that J. S. Ussery, a citizen of Saline County, Missouri, has filed information in writing that Maudie Ussery of Grand Pass, Missouri, is insane; that her insanity is of less than one year's dureation; that she has not estate sufficient to support her at State Hospital No. 1 at Fulton, Missouri, and that she is a resident of Saline County, Missouri; and that now the above cause coming on to be heard, and the facts as stated, being proved by two good witnesses, one of whom is a respectable practicing physician, it is considered by the court that the said Maudie Ussery is insane and a proper person to be sent to the State Hospital at Fulton, Missouri, as a county patient.

"It is therefore ordered by the court that the said Maudie Ussery be sent to State Hospital No. 1 at Fulton, Missouri, to undergo treatment thereat as a county patient, and that the clerk of this court make out and transmit to the Superintendent of said Hospital a copy of this order with the request that the said Maudie Ussery be admitted to said Hospital."

Plaintiff, the alleged insane person, did not appear at the hearing. The county court appointed a reputable attorney to represent her, who attended the hearing on her behalf, but it is not shown that she had anything to do with his appointment or appearance, or knew thereof at the time. Pursuant to said judgment and order of the county court plaintiff was committed to the hospital. Such further facts as may be necessary will be stated in the course of our opinion.

Section 8636, Revised Statutes 1929 (Mo. Stat. Ann., p. 7741), provides that the several county courts shall have power to send to a state hospital such of their insane poor as may be entitled to admission thereto, and further provides for the support and maintenance therein of such patients at the expense of the county from which sent. [Except as may be otherwise indicated reference herein to statutes will be to Revsied Statutes, 1929, and corresponding sections in Mo. Stat. Ann.] Subsequent sections provide the procedure. By Section 8643, "Some citizen residing in the proper county shall file with the clerk of the county court of such county a statement, in writing, which shall be substantially as follows:" (setting out the form). The statute does not require that the statement be verified. The statement filed by J. S. Ussery in the instant case (quoted above) substantially complies with that section of the statute. The next section, 8644, provides that the clerk shall thereupon issue subpoenas for the persons named as witnesses and such others as he may think proper, commanding them to appear at a specified time, which shall be the first day of the first session of the court thereafter. By Section 8645, whenever a poor person shall be apprehended upon a supposition that he is insane the clerk is required to convene the county court forthwith for the purpose of passing upon the sanity or insanity of such person. Section 8646 provides for the hearing, before the court, or before a jury if one be ordered, and that at least one of the witnesses examined shall be a reputable physician. The statute does not require that the hearing be before a jury unless one is ordered. The question of the validity of a hearing before the court, without a jury, where a jury is not demanded, is not raised in this case and will not be discussed, but that such hearing may lawfully be held under a similar statute in the probate court, in an insanity proceeding, see In re Moynihan, 332 Mo. 1022, 62 S. W. (2d) 410.

Section 8647 provides that if, after such examination (of witnesses) the court, or the jury if one has been employed, "shall be satisfied of the truth of the facts set forth in the statement," (meaning the statement filed under Sec. 8643), the court shall cause a suitable order to be entered of record, "upon their own decision, or, where the verdict of the jury has been rendered, upon the verdict;" and that the order shall further set forth that the person found to be insane is a fit subject to be sent to a state hospital, naming the particular hospital, to undergo treatment therein; and that the court shall further require the medical witness to make out such a detailed history of the case as is required by Section 8640, and that the clerk of the court shall forthwith forward a certified copy of said order of court to the superintendent of the hospital, accompanying the same with a request for admission of the person found to be insane.

Under Section 8649, it is the duty of the clerk of the county court

forthwith to transmit to the superintendent of the designated hospital a certified copy of the court's order and, if advised that the patient can be received, to "issue his warrant to the sheriff of his county, or any other suitable person, commanding him forthwith to arrest such insane person and convey him to the state hospital designated in the order. If the clerk be satisfied of its necessity, he may authorize one or more assistants to be employed. Said warrant shall be substantially as follows:" (setting out the form).

It will be seen that the statute gives the county court jurisdiction to inquire into the sanity of persons alleged to be insane and to adjudicate thereon, where it is sought to send such persons to a state hospital at the expense of the county and it is the only court that has authority to order an insane person sent to a state hospital at the public expense. When, therefore, the statement required by Section 8643 was filed the court was vested with jurisdiction of the subject matter. Plaintiff says the statement was void upon its face, because not verified. The statute did not require it to be verified and it was not void for want of verification. It is asserted that the notice (copied above) was void on its face because purporting to be based upon "an information subscribed and sworn to" and charging that plaintiff was "incapable of managing her affairs," whereas the "information"—statement filed—was not sworn to and did not allege that plaintiff was "incapable of managing her affairs." Said allegations of the notice were unnecessary and may be regarded as surplusage. We do not think they rendered the notice void.

It is further contended that the service of the notice was invalid and that, therefore, in legal effect plaintiff had no notice. This contention presents a more serious question. In the statutes prescribing the procedure in county courts for inquiring into the sanity of poor persons alleged to be insane and sending them to a state hospital, as such statutes existed in 1935, we find no provision for notice to the alleged insane person. The statute has since been amended in this respect so as to require notice. [Laws 1937, p. 510, sec. 8644.] But notice and an opportunity to be heard are essential to due process of law and a valid judgment cannot be rendered without notice to the person whose rights are to be passed upon. See: Hunt v. Searcy, 167 Mo. 158, 67 S. W. 206, holding a judgment of insanity (in the probate court), without notice to the person adjudged insane and without appearance, to be void, whether the statute required such notice or not; Shanklin v. Boyce et al., 275 Mo. 5, 204 S. W. 187, approving and following Hunt v. Searcy. Under the reasoning of those cases and others of like import it is clear that notice to plaintiff was essential before a valid judgment depriving her of her liberty could be rendered.

As we have pointed out the statutes we are considering made no provision for notice to the alleged insane person and, of course, there-

fore, none as to the manner of service of such notice if one were issued. Counsel have cited no cases and we have been able to find but one dealing directly with the question of how and by whom such notice must be served, viz., Skelly v. The Maccabees, 217 Mo. App. 333, 272 S. W. 1089. In that case the notice to the alleged insane person (in a probate court proceeding) had been served upon such person in the asylum by a nurse. The court held that the notice is jurisdictional and corresponds to the summons in ordinary actions, citing cases so holding, and said that the service of the notice must be by the sheriff or other proper officer of the court. The adjudication of insanity was held void for want of valid service of the notice. The court said, 272 S. W. l. c. 1090, "it is only after a party is in court that service of notice may be made by a private individual as provided in Section 1217, R. S. 1919" (now Sec. 761, R. S. 1929, Mo. Stat. Ann., p. 981), citing State ex rel. Woodson v. Robinson (an election contest case), 270 Mo. 212, 192 S. W. 1001. In State ex rel. Finch v. Duncan, 195 Mo. App. 541, 193 S. W. 950, it is said that such notice is a "jurisdictional paper," "corresponds to the summons in ordinary actions" and has the force and effect of a summons. [See, also, to same effect, Crow v. Meyersieck, 88 Mo. 411; Hunt v. Searcy, supra.]

Section 728, Revised Statutes 1929 (Mo. Stat. Ann., p. 947), provides that a summons may be served, either: first, by reading the writ to the defendant and delivering to him a copy of the petition and writ; or second, by delivering to him a copy of the petition and writ; or third, by leaving a copy of the petition and writ at his usual place of abode, with some person of his family over the age of fifteen years. (Said section contains further provisions not here pertinent.) It is true said section is found in the general code of civil procedure, which in some respects may not be applicable to a proceeding such as we are considering. We cite it to illustrate the legislative thought and purpose as to the mode of service of original process. We know of no statutory authority for service of original process, by which a person is brought into court and subjected to its jurisdiction, by merely reading the writ—the summons or notice analogous to a summons—to such person. It might be argued that if the person were really insane reading the notice would be as efficacious as leaving a copy because he would not understand it in either event, and if sane he would get the same information from the reading as from a copy left with him. But in either case a copy of the notice left with such person would likely be more effective, more apt to convey accurate information and protect the rights of the individual, than a mere reading of it. If such person is insane and therefore unable to comprehend the meaning from hearing the notice read or, if sane, fails, through ignorance or perhaps a perfunctory and careless reading, to grasp fully its import, a copy left with him may apprise relatives or others interested in his welfare and lead to pro-

tection of his rights. If the mere reading of a summons in a civil action, where property rights alone are involved, is not sufficient service under the statute (as it would not be), why should such reading of a notice such as the one in question, in a proceeding involving the liberty of the citizen and all that an adjudication of insanity connotes, be deemed sufficient? We are not willing to say and to lay down as a precedent that such service of the notice was legal service. We are constrained to hold that there was no legal service of notice upon plaintiff and that the county court's judgment was therefore invalid. The fact that the court of its own volition appointed an attorney for plaintiff and he appeared in her behalf cannot supply the want of notice. She had nothing to do with that and the attorney's appearance was not her appearance.

But it does not necessarily follow from the above holding that the defendants are liable in damages in this case. The county courts are courts of record and, as pointed out above, to them alone is committed jurisdiction to commit persons to the state hospitals for the insane at the expense of their respective counties. In doing that they have authority and it is necessary to determine whether or not the person in question is insane. In exercising this jurisdiction they act judicially. In 25 Corpus Juris, page 515, section 98, we read:

"As the rule is frequently stated, a judicial officer is not liable for acts done in his judicial capacity where there is not a clear absence of all jurisdiction over the subject matter and person, even though such acts constitute an excessive exercise of jurisdiction or involve a decision that the officer had jurisdiction over the particular case where in fact he had none. By excess of jurisdiction, as distinguished from the entire absence of jurisdiction, is meant that the act, although within the general power of the judge, is not authorized with respect to the particular case, because the conditions which alone authorize the exercise of his general power in that particular case are wanting; but the distinction is not always clear in itself, nor is it consistently treated. Several well considered opinions have accordingly stated the rule in somewhat different terms to the effect that a judicial officer is not liable when the arrest or detention is in a case belonging to a class over which he has cognizance, and is by complaint or other proceedings put at least colorably under his jurisdiction. The principle involved is that all judicial officers are protected by their official character from liability in tort, because of public conduct clearly within the pale of their authority, although involving demonstrable legal error."

"If there is not a clear absence of all jurisdiction, and if the complaint, or affidavit or other preliminary proceedings confer on him at least colorably the right to determine whether or not to act in the particular case, a judicial officer is not liable for his erroneous decision, although his decision involves an error of law, or of fact."

In 11 Ruling Case Law, page 813, section 26, it is said that "It has always been a doctrine of the common law, and seems essential to the maintenance of any system of courts, that the judges whose duty it is to pass on and determine controversies should not be liable to be sued personally for their errors or alleged errors. In many of the cases, as is shown by the next succeeding paragraph, this immunity has been confined to judges of courts of general jurisdiction, as distinguished from those whose jurisdiction is special or limited." But, — page 815, section 28 — "In the latter cases a clear tendency has been evident to abolish altogether the discrimination between judges of different rank, and to extend to justices of the peace and other lesser judicial officers immunity from personal responsibility for the correctness of their decisions and acts to the same extent that it is granted to judges of the superior courts. The law has recently been thus summarized in a carefully considered case: 'The judge of a court of inferior or limited jurisdiction is liable (a) when he acts without a general jurisdiction of the subject matter, even though his act involves his decision, made in good faith, that he has such jurisdiction. (b) When such judge acts fully within his jurisdiction, i. e., when he has jurisdiction of the subject matter, and has also acquired jurisdiction of the person in the particular case, he is not liable, though he act both maliciously and corruptly. (c) When such judge acts judicially with respect to a subject matter of which he has a general jurisdiction, but in the particular case he has acquired no jurisdiction of the person affected, he is not liable if the act involves his present or previous affirmative decision that he has jurisdiction of such person and authority to proceed in the particular case, provided (1) a colorable case has been presented to him which fairly calls for or permits the exercise of his judgment with respect thereto; and provided (2) he has determined in good faith, without malice or corruption, that the case presented calls for the exercise of his general jurisdiction.' "

The "carefully considered case" referred to in the above quotation is Broom v. Douglass, 175 Ala. 268, 57 So. 860, Ann. Cas. 1914C, 1155, 44 L. R. A. (N. S.) 164; and see notes to said case in Ann. Cas. 1914C, and 44 L. R. A. (N. S.).

█ While our county and probate courts are, generally speaking, courts of limited jurisdiction, yet, as said in State v. Fulton, 152 Mo. App. 345, 348, 133 S. W. 95, the case of Johnson v. Beazley, 65 Mo. 250 (overruling some prior decisions), announced the principle that "while the probate and county courts are courts of limited jurisdiction and their power to act is provided by the statute, yet as to such matters as the statute places exclusively within their jurisdiction they stand on the same footing as courts of general jurisdiction, and the same presumptions are to be indulged in favor of the regularity of their proceedings and the validity of their judgments and orders

in relation to the matters exclusively confided to their jurisdiction as are indulged in favor of the judgments and orders of a court of general jurisdiction. This case has been cited and the principle therein announced approved in all the later cases in this State. [Desloge v. Tucker, 196 Mo. 587, 601, 94 S. W. 283, and cases cited; Ancell v. Bridge Co., 223 Mo. 209, 227, 122 S. W. 709.]'' The opinion of the Springfield Court of Appeals in State v. Fulton, supra, was adopted by the St. Louis Court of Appeals, 184 S. W. 938.

In Desloge v. Tucker, supra, 196 Mo. l. c. 601, 94 S. W. 286, it is said that ''though probate courts are courts of limited jurisdiction, yet, moving in the orbit of their constitutional and statutory powers, in the administration of estates, they are not inferior courts, and the same liberal presumptions and intendments are indulged to sustain their proceedings and jurisdiction (attacked collaterally) as are indulged in behalf of other courts of record.'' [See, also, to like effect, Brawford v. Wolfe, 103 Mo. 391, 395, 15 S. W. 426.]

In the matter of examining into and determining the question whether plaintiff should be committed to the hospital the county court had jurisdiction of the subject matter. The statute gave it jurisdiction of that class of cases and a written statement, as provided by statute, had been filed invoking its action in the particular case. It had to determine that notice had been served upon her before it could render judgment against her. In doing so it acted judicially. ''The first question to be decided by any court in any case is whether or not it has jurisdiction in point of fact.'' [Bealmer v. Hartford Fire Ins. Co., 281 Mo. 495, 501, 220 S. W. 954, 956. See, also, Mahon v. Fletcher's Estate (Mo. App.), 246 S. W. 372; Hadley v. Bernero, 103 Mo. App. 549, 78 S. W. 64; Dowdy v. Wamble, 110 Mo. 280, 19 S. W. 489.] In State v. Baty, 166 Mo. 561, 66 S. W. 428, it is said, ''Every presumption will be indulged in favor of the correctness of the action of a court of general jurisdiction, and that it proceeds by right and not by wrong. (Citing cases.) If the record is silent about a matter necessary to confer jurisdiction, or, more properly, to cause it to attach in the particular instance, the existence of such matter (nothing appearing of record to the contrary) will be presumed.'' And to same effect see Hadley v. Bernero, supra, where the record was silent as to finding of a fact necessary to give the circuit court appellate jurisdiction but the court retained and decided the case.

It is not shown that the county court made a record showing that it found notice had been given and it did not so state in its judgment. The statute did not provide that such fact should be stated in the judgment or order required to be entered of record. But since such finding or determination was necessary before the court could proceed to final judgment against plaintiff we think, in the light of the principles enunciated in the cases we have cited above, the presumption must be indulged that it did so determine. In so de-

termining it erred, because the notice was not legally served, but it was an error made in the exercise of a judicial function, for which the judges cannot, on well settled principles of law, be held liable in damages.

Neither can Dr. Haynes or Piper be held liable. Dr. Haynes took no part in the actual commitment of plaintiff to the hospital. He was called and testified as a witness but there is no contention that he gave false or biased testimony. He also, at the behest of the county court, made out the certificate required by the statute to be made and transmitted to the superintendent of the hospital. And there his connection with the matter ended.

Piper, as clerk, through his deputy (he did not do it himself), issued the notice to plaintiff, as by statute commanded. It was based on a sufficient statement, theretofore filed. He also, through his deputy, issued the warrant of commitment, again as by statute required. It was based on the court's judgment and order, which was fair and sufficient on its face. As to Haynes and Piper, as well as to the county judges, we repeat there was no evidence of conspiracy, malice or intentional wrongful conduct. All appear to have acted throughout honestly and in good faith.

We mention briefly one or two other contentions now urged by plaintiff. She now urges that the ''information,'' or statement filed by Mr. Ussery was not filed till May 16th, a day after the hearing held by the county court. This contention is based on the fact that the clerk stamped or marked that paper, as well as the notice on which Dr. Haynes made his return, ''Filed May 16, 1935.'' It appears from Piper's testimony that those papers were originally lodged with the court and the filing stamp or mark put on by him later. However that may be the filing stamp is not conclusive of the time of the actual filing, in view of other parts of the county court's record and files. The court's judgment, entered May 15th, recites that ''J. S. Ussery . . . *has filed* information,'' etc. He filed but one, dated May 14th. Notice was issued on May 14th, reciting that information ''has been filed.'' The return of service of that notice shows service thereof, such as it was, on May 14th. And in addition to all this, plaintiff's petition herein alleged that the statement was filed May 14, 1935, and that the notice was issued and Dr. Haynes' return thereon made on May 14, 1935. This contention is without merit.

Plaintiff also now says the warrant of commitment was void, because directed to ''State Hospital No. 1, Fulton, Mo.,'' instead of to C. B. Davis, who actually served it, accompanied by some members of plaintiff's family. The warrant named Davis and another to assist in executing it. According to the form prescribed by statute, Section 8649, supra, the warrant is to be directed ''The State of Missouri, to ——————————————.'' The name of the person who is to execute the warrant should be written in the blank space. But

this contention is evidently an afterthought. It was not made below. Contra, plaintiff in her petition set out the warrant under which she there said she had been arrested and taken to the hospital, and as there set out the warrant was directed *to C. B. Davis,* as plaintiff now contends it should have been in order to authorize him to execute it. In these circumstances we need not consider what effect, if any, the misdirection of the warrant might otherwise have.

At the close of plaintiff's evidence and again at the close of all the evidence the defendants all requested peremptory instructions directing verdicts for them. The court refused those requested instructions and gave for plaintiff an instruction declaring that she had been illegally confined in the hospital and directing a verdict for her against "all or any of the defendants" found to have been "instrumental in causing her confinement," or to have contributed thereto, directly or indirectly. It is contended that certain instructions given on behalf of defendants were in conflict with plaintiff's said instruction, and perhaps, to some extent, they were. The circuit court no doubt so concluded, as it was on that ground it sustained the motion for new trial. In the view we take of the case it is needless to set out the instructions or consider the question of conflict, because in our opinion the court should have directed a verdict for defendants. But since the jury returned such verdict, the right result is reached by permitting that verdict to stand. The order of the circuit court sustaining the motion for new trial is reversed and the cause is remanded, with directions to the circuit court to set aside said order, reinstate the verdict and enter judgment in accordance therewith. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by Cooley, C., is adopted as the opinion of the court. All the judges concur.