STATE OF MISSOURI, at the Relation of CLARENCE A. PERRINE, Secretary, Elks Club, Plaintiff, v. JOSEPH F. KEIRNAN, Director of Liquor Control of Kansas City, Missouri, HENRY JOHNSON, Chief of Police for Kansas City, Missouri, and the CITY OF KANSAS CITY, Missouri, a Municipal Corporation, Defendants. And three cases, consolidated with the above cause, each entitled: KANSAS CITY, Plaintiff, v. CLARENCE A. PERRINE, Defendant. W. H. H. PIATT and PERCY C. FIELD, Respondents, v. KANSAS CITY LODGE No. 26 BENEVOLENT AND PROTECTIVE ORDER OF ELKS and BOARD. OF TRUSTEES OF KANSAS CITY LODGE No. 26 BENEVOLENT AND PROTECTIVE ORDER OF ELKS, Appellants, No. 41685—237 S. W. (2d) 156.

Division Two, December 11, 1950.

Motion for Rehearing and to Transfer to Banc Overruled in Per Curiam Opinion filed, March 12, 1951.

*Marcy K. Brown, Jr.,* for appellants; *Joseph R. Miniace* of counsel.

*Martin J. O'Donnell* for respondents.

[157] BOHLING, C.—This action involves an allowance for attorneys' fee to W. H. H. Piatt and Percy C. Field, respondents here,

of $2,500, subject to a credit of $500, against the "Board of Trustees of Kansas City Lodge No. 26 Benevolent and Protective Order of Elks" and "Kansas City Lodge No. 26 Benevolent and Protective Order of Elks," appellants here. Appellants contend the judgment is void for a number of reasons, including the deprivation of property without due process of law.

The Benevolent and Protective Order of Elks is a national fraternal institution and a local lodge in Kansas City, Missouri, is Lodge No. 26, which occupies two adjacent buildings; one at 120 East 7th street and the other at 630 Grand avenue.

Clarence A. Perrine was employed under a contract by Lodge No. 26 as "Club Manager," subject to supervision by the Board of Trustees, for a period of five years to be ended October 1, 1946. In 1946 the contract was extended for an additional five years.

A permit, lapsing June 30, 1948, had been issued by the Director of Liquor Control for Kansas City to Clarence A. Perrine to sell liquor by the drink at retail at 120 East 7th street. We understand these permits were issued only to an individual.

In April, 1947, this liquor permit had been suspended for ten days on account of gambling paraphernalia being on the premises.

In December, 1947, the police searched the premises and found a number of unused slot machines stored at 630 Grand avenue.

Perrine, respondents' witness, testified that two slot machines were being operated in December, 1947; that after the raid he was placed in jail; that he telephoned to Joseph N. Miniace and Harry E. Whitney to get him out; that he engaged them as counsel for the Elks Club; that he was charged in the Municipal court with the possession of gambling equipment, the operation of gambling equipment, and the operation of a gambling house; that he was fined $250 on each of two charges, and $500 on the other charge; and that all three cases were appealed.

The Director of Liquor Control on December 17, 1947, revoked the aforesaid permit issued to Perrine to sell liquor.

On December 26, 1947, upon application, a writ of certiorari was issued out of the circuit court in a cause entitled "State of Missouri at the relation of Clarence A. Perrine, Secretary Elks Club, plaintiff, vs. Joseph F. Keirnan, Director of Liquor Control for Kansas City, Missouri," et al., defendants. The writ recited that by a petition of "Clarence A. Perrine" it appeared said defendants had exceeded their jurisdiction in the revocation of said liquor permit et cetera; and "that all proceedings be stayed until the further order of this court."

The Grand Lodge of the Elks entered upon the scene, suspended the charter of Lodge No. 26, removed its officers, including [158] the Trustees, appointed a reorganization committee to take charge, and directed that the contract between Lodge No. 26 and Perrine be can-

celled. Perrine was removed as Secretary and as Manager on April 6, 1948. Others were appointed as Secretary and as Manager, and a Board of Governors was substituted for the Board of Trustees of Lodge No. 26. Perrine admittedly ceased to be Secretary of the Lodge on April 1, 1948, but claimed he continued as Manager until June 2, 1948.

Upon Perrine ceasing to be Secretary Miniace and Whitney, who were members of Lodge No. 26, withdrew on April 12, 1948, as attorneys of record in the pending proceedings.

Perrine asked Piatt and Field, who were also members of Lodge No. 26, to appear as attorneys. Piatt asked for a $500 retainer.

Under the by-laws all bills against the Lodge had to be approved by a majority vote at a regular lodge session before the Exalted Ruler, the Secretary, the Treasurer, or the Chairman of the Board of Trustees were authorized to make payment. However, liquor was delivered "C. O. D.," and checks, signed in blank, were left with Perrine for purchases of liquor.

A few days, three to five, after Perrine first saw Piatt and Field, Perrine took Field to the office of the Club, wrote a check for $300 and gave it to Field. Perrine said he would pay the $200 balance on the retainer as soon as he made another deposit. These checks were drawn on the account of Lodge No. 26 and paid to Piatt and Field. The $300 check was dated May 1, 1948, and signed "Chas. Louthain Exalted Ruler. Clarence A. Perrine, Sec'y." The $200 check was dated May 14, 1948, and signed "Clarence A. Perrine. Harvey W. Hedrick, Acting Sec'y." Notwithstanding the proceedings taken by the Lodge against him in April, Perrine testified he had the right to sign checks as "Manager" up to June 2, 1948, although he did not sign either check in that capacity.

Piatt and Field entered their appearance as attorneys for "plaintiff" on May 5, 1948. They claim their services were on behalf of said Lodge No. 26; whereas on behalf of the Lodge it is contended they represented Perrine.

There was evidence an understanding was reached with the City authorities that if Perrine would resign or be discharged all proceedings would be dropped. Perrine refused to discontinue as Manager. Whitney and other lodge members, as well as attorneys representing the City, informed Piatt and Field of said agreement. An Assistant City Counselor testified that he fully intended to dismiss the prosecutions, and that he told Mr. Field the slot machine prosecutions were against Perrine. There was also testimony that, within a few days after Piatt and Field entered the case, they were informed by Whitney and other members of the lodge that they did not represent the Lodge and would have to look to Perrine for their compensation, which was denied by Piatt and Field. The matter of employing Piatt and Field

was never taken up with the Lodge and the $300 and $200 checks paid to them were never taken up or approved by the Lodge.

On May 20, 1948, Piatt and Field filed a "Motion of plaintiff herein, Clarence A. Perrine, to quash" the return to the writ of certiorari et cetera. Paragraph "5" of said motion contained allegations, among others, to the effect the Lodge was a charitable organization and a license fee for the operation of a bar thereat could not be legally exacted.

On June 29, 1948, Mr. Whitney and James E. King, as "members of Kansas City Lodge No. 26 of the Benevolent and Protective Order of Elks and attorneys for the Board of Trustees," filed a so-called "Interpleader" to said motion to quash, asking that the certiorari proceeding be dismissed so far as said Lodge was concerned, and alleging that Perrine was no longer the Secretary, or Manager, or an employee of said Lodge; that a trial would not clarify any issue involving said Lodge; and, denying statements in the aforesaid paragraph 5, alleged that said Lodge was willing to purchase the necessary license for the operation of said bar and did not come strictly under the law governing charitable institutions.

[159] The bar continued to operate under the stay order issued in connection with the writ of certiorari. On August 12, 1948, the Director of Liquor Control of Kansas City issued a permit to sell liquor by the drink at 120 East 7th street, to Edward P. Curtis, who had been appointed Manager.

An application by Piatt and Field, as "Attorneys for Clarence Perrine," to transfer to Division No. 6 Causes Nos. 3779, 3780 and 3781, the slot machine prosecutions against Perrine, for consolidation with Cause No. 525, 545, the certiorari proceeding, was filed and sustained on September 10, 1948, said application having been consented to only by the Assistant City Counselor in charge of the slot machine cases.

On September 16, 1948, Piatt and Field filed a motion for Clarence A. Perrine "to sustain motion to quash" theretofore filed, and to dismiss said Causes Nos. 3779, 3780 and 3781. Paragraph "9" thereof alleged that the "Elks Club" had filed an interplea and thereby entered the appearance of its Trustees for all purposes, including the allowance of reasonable fees to Piatt and Field for services since June 29, 1948.

On September 27, 1948, the aforesaid motions of May 20, and September 16, 1948, were sustained; and a judgment was entered quashing the proceeding of December 17, 1947, by the Director of Liquor Control, and quashing the judgments of the Municipal court in Causes Nos. 3779, 3780 and 3781, each entitled "Kansas City vs. Clarence A. Perrine," and the court also ordered that all effects taken from the building at 630 Grand avenue "be returned to B. P. O. E. Trustees there."

The police released the slot machines to Lodge No. 26 on or before February 8, 1949.

Thereafter, on May 20, 1949, Piatt and Field, respondents, filed their motion for the allowance of a reasonable attorneys' fee; and on June 20, 1949, the court found that $2,500 was a reasonable fee, subject to a credit of $500, and that respondents had a lien on the slot machines for said judgment debt, and also entered a general judgment for $2,000 against "said Board of Trustees of said Kansas City Lodge No. 26 Benevolent and Protective Order of Elks, and said Kansas City Lodge No. 26 Benevolent and Protective Order of Elks."

No service of said motion for attorneys' fee upon appellants is shown of record. It appears that service was attempted by a registered letter, dated May 20th and received May 21 or 23, 1949, addressed to appellants, stating: "Enclosed, for your information, Motion, this day filed and returnable June 10, 1949, 9:30 A. M. Very truly, Martin J. O'Donnell." The only testimony on the issue is that no motion of any nature was enclosed with the letter. As a result, no appearance was made in opposition to the motion and judgment was by default.

A motion, filed June 21, 1949, to set aside said judgment was overruled, after hearing, on August 12, 1949.

This was followed by an application for leave to file a motion to set aside the judgment or for a new trial on behalf of named individuals as constituting the "last Board of Trustees" of said Lodge No. 26, and named individuals as constituting the "present Board of Governors" of said Lodge No. 26 (an appearance having been theretofore entered on behalf of said Boards), which motion was denied.

The individuals constituting the Board of Trustees and the Board of Governors aforesaid appealed on August 20, 1949.

A general execution issued on said judgment on October 5, 1949. The Board of Governors aforesaid filed a motion to quash said execution. On October 28, 1949, respondents' motion to strike said motion to quash was sustained. The Board of Governors appealed from said order.

If we have jurisdiction of this appeal, it is because of some constitutional issue. Respondents say, without citation of authority: "Due process is not involved, Interpleader enters appellants' appearance for every purpose." Appellants contend the judgment and execution constitute a denial and a deprivation of property without due process of law (Mo. Const. 1945, Art. I, § 10; U. S. Const., Amend. 14) in that the judgment purports to place a [160] lien upon personal property belonging to the Board of Trustees or the Board of Governors of the Lodge which was never under the court's jurisdiction, and purports to render a personal judgment against unnamed Trustees, who were never parties to the action, who were never served with

process or appeared in the action until after judgment, and then only to have it set.aside; and that the execution was levied on trust funds to the credit of such Board .of Trustees or Board of Governors without naming any one of them. Under the authorities, jurisdiction is here. Badger Lumber Co. v. Goodrich, 353 Mo. 769, 184 S. W. 2d 435, 436 [1]:

■ Our Civil Code contemplates that process shall be served upon parties against whom a claim is made, together with a copy of the petition setting forth such claim. Laws 1943, pp. 365, 366, §§ 23, 27, p. 357, § 5; Mo. R. S. A., §§ 847.23, 847.27, 847.5. The instant record discloses that there was no service upon appellants of the motion for an allowance to respondents of a fee. This after-judgment motion asserted the only claim made against appellants. The action of courts in depriving parties of substantive rights without providing adequate notiçe and opportunity to defend constitutes a denial of due process of law under the Federal and State constitutions. Shelley v. Kraemer, 334 U. S. 1, 16; 68 S. Ct. 836, 92 L. Ed. 1161, 3 A. L. R. 2d 441; Brinkerhoff-Faris T. & S. Co. v. Hill, 281 U. S. 673, 680, 50 S. Ct. 451, 74 L. Ed. 1107; Conway v. Robinson (Mo.), 178 S. W. 154, 157[2]; Cornet v. St. Louis County (Mo.), 240 S. W. 107, 111[4, 5]; Ussery v. Haynes, 344 Mo. 530, 127 S. W. 2d 410, 414[4]; Union Cemetery Ass'n v. Kansas City, 252 Mo. 466, 161 S. W. 261, 273[9]. The case of Conrad v. State Industrial Comm., 181 Okla. 324, 73 P. 2d 858, 860[4], applied the rule to the allowance of an attorney's fee.

Respondents base their right to proceed by motion upon the so-called "Interpleader" of June 20, 1948, in the certiorari proceeding. It was thereafter that the application to consolidate the slot machine prosecutions with the certiorari proceeding was filed and sustained without notice to appellants. Consult, with respect to the consolidation of causes, Laws 1943, p. 384, § 97(a), Mo. R. S. A., § 847.97(a) (reenacting § 1904, R. S. 1939, Mo. R. S. A.); Anderson v. Gaines, 156 Mo. 664, 668(I), 57 S. W. 726, 727(1); Carr, Missouri Civil Procedure, Vol. I, p. 15, § 7, f, p. 795, § 795; Vol. II, p. 558.

We have stated the facts in some detail and need not develop the several additional grounds advanced for setting aside the judgment.

■ This cause was argued .and submitted here on September 21, 1950. Thereafter, on September 29, 1950, respondents filed a motion to dismiss on the ground mainly that appellants, by appealing to this Court instead of the Kansas City Court of Appeals, "have attempted to use this Court as a means for delaying the payment of the debt due to respondents during their lifetime." The motion is without merit and is overruled.

It follows that the judgment against appellants and in favor of respondents for attorneys' fee may not stand. Accordingly, the judgment is reversed and the cause is remanded with instructions to set

aside said judgment and to quash the execution issued thereon against appellants. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by Bohling, C., is adopted as the opinion of the court. All the judges concur.

On Motions for Rehearing and Transfer to Court en Banc.

PER CURIAM:—Respondents have filed motions for rehearing and for transfer to Banc.

█ Respondents ask that the cause be transferred to Court en Banc on the ground "a federal question is involved." 1945 Mo. Const. Art. V, § 9. The essential ground of our holding was the failure to comply with statutory requirements (Laws 1943, p. 357 et seq., §§ 5, 23, 27; R. S. 1949, §§ 506.100, [161] 506.110, 506.150) covering notice to a party of a claim or of a new or additional claim against him. The statement that such failure resulted in a denial of due process under the Federal and State constitutions was advanced arguendo in support of the underlying ground for the holding and was not essential thereto. The reference to the Federal constitution may be deleted without affecting the result in any degree; and there is no federal question involved in a jurisdictional sense of sufficient substance to necessitate a transfer of the cause to Court en Banc. Consult Wilson & Co. v. Hartford Fire Ins. Co., 300 Mo. 1, 254 S. W. 266, 286[28]; Dowling v. Luisetti, 351 Mo. 514,.173 S. W. 2d 381, 387[8]; McAllister v. St. Louis Mer. Br. Term. Ry. Co., 324 Mo. 1005, 25 S. W. 2d 791, 793[1, 2].

We have carefully reviewed the motion for rehearing. The pertinent issues there presented are sufficiently covered in the opinion.

The motions for rehearing and for transfer to Banc are overruled.